Tania M. MEJIA, on behalf of herself
and all others similarly
situated, Plaintiff,

v.

NEW YORK SHERATON HOTEL, a
division of Sheraton Corp., Sheraton
Corp., Defendants.

No. 77 Civ. 5295(MP).

United States District Court,
S. D. New York.

Oct. 4, 1979.

Jon D. Sherry, New York City, for plaintiff.

Solin & Breindel, New York City, by Daniel R. Solin, Robert Aronson, New York City, for defendants.

SUPPLEMENTAL FINDINGS OF FACT

POLLACK, District Judge.

Judgment in this case dismissing the complaint on the merits was entered in the District Court on November 1, 1978. Notice of appeal therefrom dated November 28, 1978 was filed by the plaintiff pro se. (She was represented throughout the District Court proceedings by a privately retained attorney). An application was made to the Court of Appeals, pro se, for leave to proceed in forma pauperis. On November 29, 1978 the District Court certified that the appeal lacked merit, was not taken in good faith and that the party otherwise was not entitled so to proceed.

The Court of Appeals, (Honorable Ellsworth A. Van Graafeiland, Jon O. Newman and Amalia L. Kearse, CJJ) entered an order on August 14, 1979 reciting that

We find no merit in that portion of appellant's claim based upon her employer's failure to promote her to a front office cashier's position which entitles her to the relief sought. However, in order that we may make an informed decision on appellant's claim of unlawful discharge, we remand to the District Court for further findings on that issue alone.

The following findings on the subject remanded have heretofore been made in the District Court's Decision dated October 31, 1978, to wit:

Plaintiff alleges in her complaint that she was discharged on June 24, 1975 from her position as a chambermaid with the Sheraton Hotel on account of her Spanish surname and the fact that her primary language was Spanish.

.        .        .        .        .

The defendants deny any discriminatory purpose or effect of their conduct and assert that the discharge from employment was for violation of a posted rule forbidding chambermaids from going into a guest's chambers while off-duty—a serious security infraction.

.        .        .        .        .

The facts established herein are the following.

.        .        .        .        .

On June 24, 1975 plaintiff was discharged from her employment at the hotel. The termination of employment form which was filled out at the time and dated June 25, 1975 states that the plaintiff was terminated "for being found . . . in Room 612 which was an occupied room

when she was not on duty, which is a strict violation of House Rule No. 17".

.    .    .    .    .

The Sheraton Hotel employs about 650 persons, more than a third of whom are of Hispanic origin, is a commercial type hotel catering to the general public; and persons of Hispanic origin were regularly employed [by the Hotel].    .    .    .

.    .    .    .    .

The credible evidence clearly and convincingly establishes that plaintiff was not discharged for any discriminatory reasons or by reason of Hispanic origin. Defendants sustained their burden and established by clear and convincing evidence ample legitimate grounds for terminating her employment.

.    .    .    .    .

The Court heard and saw the witnesses and on the basis of the demeanor evidence, the testimony, documents and reasonable inferences to be drawn therefrom has resolved the issues of credibility herein in favor of the defendants.

.    .    .    .    .

The foregoing findings heretofore made in the District Court's Decision are hereby supplemented by further evidentiary detail from which the ultimate facts were derived in part.

On September 23, 1971 plaintiff was given an "Employee Warning Notice" issued by the hotel regarding jewelry and articles of clothing that were allegedly given to her by a guest. She was informed that at no time was an employee to take articles out of the hotel without an official pass signed by her department head. She was also informed to be sure that no similar occurrence happened in the future and she was directed to return the articles in question to the guest. At the time, the plaintiff was questioned by the Director of Security of the hotel who made the determination to issue such a warning to the plaintiff.

In or about May 1975 the plaintiff claiming somehow to have injured her back and desirous of vacationing, or both, did not appear for work at the hotel. On the morning of June 24, 1975 a representative of the hotel, one Sheila Palmer, attempted to telephone the plaintiff because she had heard from another maid that the plaintiff had quit her job. Miss Palmer wanted to determine why plaintiff had not returned to work following her vacation. Miss Palmer did not reach the plaintiff by phone. Approximately one hour after this telephone call was placed Miss Palmer's assistant called Miss Palmer to report that she had found the plaintiff, while she was off duty, in an occupied guest room (No. 612) standing by the dresser talking to another maid. As plaintiff explained it in her deposition she said she had come to the hotel and had proceeded to the sixth floor although she was not on duty there. She saw a maid's truck of another maid in the hallway and called to the other maid but getting no answer she entered the guest's room. She had no hotel duties there at the time. She found the other maid there and entered into a conversation with here. It was there that Miss Palmer's assistant found her.

The plaintiff was brought to Miss Palmer's office for a meeting with the Director of Security of the hotel and a Union Delegate. At this meeting, the Director of Security advised the representative of the hotel, Miss Palmer, that he could not be responsible for the security of the hotel if Miss Palmer was going to permit people of the housekeeping department to enter unauthorized areas of the hotel while off-duty. This was a plain violation of a known rule of the hotel known to the employees. The Union Delegate agreed. Subsequent to the meeting Miss Palmer consulted with the resident manager of the hotel and explained to him what had taken place and told the manager that it was a violation of the hotel's rules in the circumstances and received instructions from the manager of the hotel to discharge the plaintiff.

The plaintiff was accordingly discharged. She made no request of the Union Delegate to pursue a grievance through the Union in order to assist her to get her job back. The Union Delegate agreed with the hotel em-

ployees in respect to the discharge under the circumstances.

The termination of employment form which was filled out at the time and dated June 28, 1975 states:

The above is being terminated for being found by Miss Lyons, First Assistant Housekeeper, in Room 612 which was an occupied room when she was not on duty, which is a strict violation of House Rule No. 17.

Some three months after the termination of her employment the plaintiff filed a complaint with the Human Rights Division of the State of New York. In that complaint filed on September 15, 1975 she swore to the truth of the following statements:

1. In October, 1970, I commenced working for Sheraton Hotel as a chambermaid.

2. Subsequently, I developed on the job an allergy to dust and lumbar-spine contusion.

.       .       .       .       .

6. I am disabled but, was able to perform my job. Based on the foregoing, I charge Sheraton Hotel and 'John Sieland', General Manager and 'Jane' Palma, Supervisor, with discriminating against me by denying equal terms, conditions and privileges of employment *and terminating me because of my disability*, in violation of the Human Rights Law of the State of New York.

Plaintiff's first intimation that she was discharged on account of her national origin occurred on March 8, 1976, almost nine months after her discharge at which time she filed an Amended Complaint with the Division of Human Rights so stating.

The foregoing Supplemental evidentiary details shall constitute together with the initial Decision filed herein the findings of fact required by Rule 52(a).

SO ORDERED.